[Civ. No. 23385.   Second Dist., Div. Two.   June 10, 1959.]

RAYMOND VENNE et al., Respondents, v. STANDARD ACCIDENT INSURANCE COMPANY (a Corporation), Appellant.

[2]Paragraph 1(e) of the order.

[3]As set forth in paragraph 1(g) of the order.

H. T. Ellerby and Henry F. Walker for Appellant.

Schell, Delamer & Loring and Fred B. Belanger for Respondents.

FOX, P. J.—Standard Accident Insurance Company appeals from an adverse judgment in a declaratory relief action which declared that a policy which it had issued covered an accident that occurred after the owner had sold the car.

The facts in this case are undisputed. Celeste Venne was the owner of a 1950 Oldsmobile. Said automobile was covered by an insurance policy issued by the appellant naming Celeste as the insured. This policy was in full force and effect on June 30, 1956. The insurance policy contained what is referred to as an "omnibus clause," viz., the policy covered persons using the automobile with the permission of the insured. On June 29, 1956, Celeste made a bona fide sale of the Oldsmobile to Raymond Venne (her brother) and at that time delivered possession of the automobile, the endorsed certificate of ownership, and the certificate of registration to the

purchaser. Notice of the above transfer was first received by the Department of Motor Vehicles on July 6, 1956. On June 30, 1956, the day following the sale, Raymond was involved in a traffic accident. Raymond had his own insurance which covered the date of the accident. As a result of the above accident, an action was commenced against Celeste and Raymond. Demand was made upon appellant to defend Raymond and save and hold him harmless from and against liability arising out of the accident. Said request was declined. Thereafter, on April 22, 1957, Raymond and his insurance company commenced this declaratory relief action seeking to have determined the rights, duties and obligations of the parties under the policy issued by the appellant. The court found that the subject policy covered the instant accident on a pro rata basis. It is from this judgment that appellant appeals.

Appellant seeks a reversal on the ground that as there was a sale of the vehicle to Raymond, he was not using it with Celeste's permission but rather as his own property. Therefore, argues appellant, the "omnibus clause" does not cover the instant situation. Respondents, on the other hand, contend that as certain formalities set forth in Vehicle Code were not complied with, there was no effective transfer of ownership, and that Celeste remained the owner and Raymond was a permissive user within the meaning of the "omnibus clause."

Section 186, Vehicle Code, provides in part:

"TRANSFER OF TITLE OR INTEREST. (a) Requirements. No transfer of the title or any interest in or to a vehicle registered hereunder shall pass and any attempted transfer shall not be effective unless and until the parties thereto have fulfilled either of the following requirements:

(1) The transferor shall have made proper endorsement and delivery of the certificate of ownership and delivery of the registration card to the transferee as provided in this code and the transferee has delivered to the department or has placed in the United States mail addressed to the department such certificate and card when and as required under this code with the proper transfer fee and thereby makes application for a transfer of registration . . . or

(2) The transferor shall have delivered to the department or shall have placed in the United States mail addressed to the department the appropriate documents for the registration or transfer of registration of such vehicle pursuant to such

sale or transfer *except as provided in Section 178.*" (Emphasis added.)

Section 178 provides:

"OWNER OR DEALER RELEASED FROM LIABILITY FOR NEGLIGENCE UPON TRANSFER. (a) An owner who has made a bona fide sale or transfer of a vehicle and has delivered possession thereof to a purchaser shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another when such owner in addition to the foregoing has fulfilled either of the following requirements:

(1) When such owner has made proper endorsement and delivery of the certificate of ownership and delivered the certificate of registration as provided in the code.

(2) When such owner has delivered to the department or has placed in the United States mail, addressed to the department, either a notice as provided in Section 177, within the time prescribed in such section, or appropriate documents for registration of such vehicle pursuant to such sale or transfer."

Section 177 provides in part:

"TRANSFEROR TO NOTIFY DEPARTMENT. (a) Whenever the owner of a vehicle registered hereunder sells or transfers his title or interest in, and delivers the possession of, said vehicle to another, said owner shall immediately notify the department of such sale or transfer giving the date thereof, the name and address of such owner and of the transferee and such description of the vehicle as may be required in the appropriate form provided for such purpose by the department."

By delivering the automobile, the endorsed certificate of ownership and the registration card to Raymond, Celeste fully complied with section 178, *supra,* and therefore relieved herself of potential civil liability. It does not necessarily follow, however, that there was an effective transfer of title prior to the date of the accident. Section 186 prescribes the manner in which an effective transfer of title may be accomplished. It is clear from the facts that, if no effect is given to the italicized portion of 186, subdivision (a) (2), there was no effective transfer of title on June 30 for the reason that section 186 had not been followed. It is appellant's contention, however, that the italicized portion of section 186, subdivision (a) (2), which refers to section 178, has the effect of incorporating 178 into 186 and as a consequence thereof, a transfer is effective if section 178 is complied with. If compliance with section 178, subdivision (a) (1)

effects a transfer under the motor vehicle registration laws, then much of the language found in that section is surplusage and confusing for, if title has effectively been transferred, the vendor is not the owner for any purpose, yet section 178 merely, says that he ". . . shall not by reason of any provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability. . . ." Therefore, it would appear that the italicized portion of 186, subdivision (a) (2) is merely a reference back to section 178 and means no more than that a vendor is relieved of section 402 liability although he has not complied with section 186. No case cited by appellant actually holds 178 compliance effects a transfer of title under the motor vehicle registration laws. Language in *Burdine* v. *Severin Motors, Inc.*, 147 Cal.App.2d 751, 756 [305 P.2d 1008], indicating the contrary is too broad and was not necessary to the opinion.

While we are of the opinion that 178, subdivision (a) (1) compliance is not sufficient to transfer title under California's motor vehicle registration laws, it seems equally clear that, as between Celeste and Raymond, there was an actual sale of the vehicle and therefore it would be unrealistic to hold that Raymond was a permissive user of the automobile involved in the accident. The "omnibus clause" extends coverage to the nonowner operator only if he has the permission of the owner to use the vehicle. Once the sale was made, Celeste had no permission to give or withhold; Raymond had an absolute right to possess and operate the subject automobile. Celeste could not prevent her vendee from using the vehicle nor could she legally reacquire possession herself without Raymond's consent. Since Raymond had the automobile plus the ownership and registration certificates he was at liberty to sell or otherwise deal with the automobile in any manner he desired. Under such circumstances, to argue that Raymond had the express or implied permission of Celeste to use the automobile would be to ignore the realities of the legal relationship between a vendor and vendee. This we may not do. A similar result obtains, although based on different grounds, where suit is brought against a wife under section 402 for the negligence of her husband while the latter was operating an automobile held as community property. "When an automobile which is community property causes injury, the wife is not liable to a party injured by the husband's negligence because the wife has no consent to give." (*Wilcox* v. *Berry*, 32 Cal.2d 189, 191 [195 P.2d 414].) As stated in *Cox* v. *Kaufman*, 77 Cal.App.

2d 449, at 452 [175 P.2d 260], ". . . no consent of the wife, express or implied, to her husband's use or operation of the community automobile could add anything as a matter of law or of fact to his rights in that respect, which are already plenary and complete."

Superficially, the instant holding may appear to be out of harmony with that reached in *Harbor Insurance Co.* v. *Paulson*, 135 Cal.App.2d 22, 29 [286 P.2d 870], where it was held that the vendee of the insured, when there was no compliance with section 186, was a permissive user for the purpose of the "omnibus clause." The result there reached was necessary in order to effectuate the policy behind section 186 and section 402.* Such is not true, however, in the case at bar, as the following discussion demonstrates. ██ In *Henry* v. *General Forming, Ltd.*, 33 Cal.2d 223, 227 [200 P.2d 785], the court discusses the policy underlying section 186 as follows: "The requirements for registration of title and ownership, as indicated by the code provisions, were enacted in the interest of the public welfare to protect innocent purchasers and afford identification of vehicles and persons responsible in cases of accident and injury." In the Paulson case, the vendor, besides failing to comply with section 186, did not deliver the ownership certificate to the vendee-operator, as was done in the case at bar. Therefore, the vendor in the Paulson case was liable under section 402 for damages as a result of the accident. If, however, the vendee were held *not* to be a permissive user, the vendor would have escaped 402 liability even though he clearly did not comply with any of those sections which were enacted to exculpate him upon a sale of the vehicle (§§ 186, 178, *supra*), for section 402 only imposes liability when the use of the automobile is with the permission of the owner. Hence, a holding that the vendee was a permissive user in the Paulson case was necessary in order to give force and meaning to sections 186 and 402. Once it was determined that a "permissive use" situation existed for the purposes of vicarious liability, it logically followed that the vendee was a permissive user for purposes of the "omnibus clause." ██ In con-

---

*Section 402, subdivision (a), reads as follows:

"Vehicle used or operated with owner's consent. Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner, for all purposes of civil damages."

trast, however, since the vendor in the instant case complied with section 178 and thereby relieved herself of 402 liability, a holding that the vendee was not a permissive user would in no manner offend the policy underlying either section 186 or 402. With the above policy factors in mind, the instant holding is not in conflict with that reached in the Paulson case.

Therefore, as Raymond was not a permissive user of the vehicle in question, and there is no other basis upon which it may be held that appellant's policy covered the instant accident, the judgment must be reversed. ■ "Since the facts are undisputed and the parties agree that a question of law only is presented, it is appropriate to reverse the judgments with directions." (*Pacific Home* v. *County of Los Angeles*, 41 Cal.2d 844, 854 [264 P.2d 539] ; *City of Eureka* v. *McKay & Co.*, 123 Cal. 666, 673-674 [56 P. 439].)

■ The judgment is reversed, with directions to the trial court to amend its findings of fact and conclusions of law in accord with the views expressed herein, and to enter judgment for appellant.

Ashburn, J., and Herndon, J., concurred.