Hugh WEATHERFORD et al., Petitioners,

v.

AETNA INSURANCE COMPANY et al.,
Respondents.

No. A-9798.

Supreme Court of Texas.

Oct. 28, 1964.

Rehearing Denied Jan. 20, 1965.

Green, Green & Wiley, Perry Rowan Smith, San Antonio, for petitioners.

Clemens, Knight, Weiss & Spencer, San Antonio, for respondents.

HAMILTON, Justice.

Petitioners here were injured in a collision between the car in which they were riding and a car driven by Leonard Smith. Petitioners filed suit against Leonard Smith alleging negligence and obtained a judgment for damages against him. Petitioners then sued Aetna Insurance Company and Bailey and Carpenter, Inc., alleging that Smith was an additional insured under a garage liability policy issued by Aetna to Bailey and Carpenter, Inc., and prayed for declaratory judgment and recovery of the amount of the unpaid judgment against Smith. On the verdict of the jury the trial court declared Smith an additional insured under the policy and rendered judgment for petitioners. The Fourth Court of Civil Appeals at San Antonio reversed and rendered judgment in favor of respondents. 370 S.W.2d 100. From this judgment petitioners appeal.

All the material facts are either undisputed or have been determined by jury findings which have in no way been attacked by the petitioners. The jury found that Bailey and Carpenter, Inc., agreed to sell the automobile in question to Leonard Smith and Robert M. Duty or either of them and that they jointly or either of them individually agreed to buy the automobile, and that this agreement was conditioned upon the payment of Smith's $50.00 check by the bank when presented for payment. The sale occurred on July 31. The next morning, August 1, Bailey and Carpenter, Inc.,

took the check to the bank and payment was refused because Smith had no account there. Immediately Bailey and Carpenter, Inc., called Smith by telephone, cancelled the sales contract, and demanded immediate return of the automobile. The automobile was not returned immediately and after several telephone calls and after Bailey and Carpenter, Inc., had sent someone to the house where Smith and Duty lived to pick up the car, without success, Smith, on the night of August 2, about 10 o'clock and while under the influence of intoxicating liquor, had a collision with petitioners. According to the jury finding the collision occurred while Smith was on his way to respondent's place of business to return the automobile pursuant to the cancellation and demand to return.

The primary question presented is: Was Smith an additional insured under the policy at the time of the collision? The garage liability policy issued by respondent Aetna Insurance Company to Bailey and Carpenter, Inc., contains the following provisions pertinent to this appeal:

"III. Definition of Insured. With respect to the insurance under coverages A. B. and D., the unqualified word 'insured' includes the named insured and also includes * * * (2) any person while using an automobile covered by this policy, * * * provided the actual use of the automobile is by the named insured or with his permission."

Petitioners contend that the action of Bailey and Carpenter, Inc., in calling Smith over the telephone, canceling the sales contract and demanding immediate return of the automobile was tantamount to granting him permission to drive the automobile, and that since Smith at the time of the collision was acting pursuant to the demand to return the automobile to Bailey and Carpenter, Inc., he was an additional insured under the policy. Petitioners reason that because at the time the demand to return the automobile was made Bailey and Carpenter, Inc., had the title to the automobile and was entitled to possession and control of it that the demand for immediate return of the automobile was a grant to Smith of permission to drive it. In the light of the facts of this case such argument amounts simply to this: When a seller who has been induced by fraud to part with possession of his property, he, by demanding that the fraudulent purchaser return the property, gives the defrauding purchaser permission to use the property for that purpose. Petitioners cite no authority supporting this proposition and we have been unable to find any authority dealing with this problem.

We have concluded that the mere demand for the immediate return of property obtained under these circumstances is not the granting of permission by the insured under the terms of the insurance policy. Respondents cite in support of their position that Smith was not an additional insured the general rule that a conditional vendee does not use the insured automobile with the consent or permission of the conditional vendor and is not within the coverage of the omnibus or additional insured clause of an automobile liability insurance policy. 36 A.L.R.2d 675; 5A Am.Jur., Automobile Insurance, p. 94. The reason for this rule is that the automobile is no longer owned by the insured in such a sense as will, legally speaking, enable the insured to give or withhold his permission or consent to the use of the automobile by the conditional vendee, since the vendor, though retaining title to the car until fully paid for, does so for security reasons only and has no control over the car and no right to its use. Petitioners say that that rule does not apply in this case because in the cases supporting the cited rule the conditional vendor did not have the *right* to possession and control, whereas in the instant case the seller did have the *right* to possession and control of the car at the time demand was made for its return. They take the position that the mere right to possession and control puts the insured in position to give or withhold permission to drive the auto-

mobile. We do not think that this necessarily follows.

In the case of Farm Bureau Mutual Insurance Company of Indiana v. Emmons, 122 Ind.App. 440, 104 N.E.2d 413, the court was dealing with a conditional sales contract where the purchaser had defaulted in some of the installment payments. Under these circumstances the seller had the right to declare a forfeiture and retake possession of the automobile. This the seller did not do. Thereafter the purchaser of the automobile was involved in a collision. It was contended that the seller's insurance policy covered the automobile under the omnibus clause because the seller had the *right* to retake possession and control of the automobile after demand. In holding contrary to this position the court had this to say:

> "We conclude, therefore, that because of the default in payment, Johnson's right or power as to the automobile, was limited to the retaking of its possession and control after demand. In the absence of such a retaking, the fact of Emmons' default in payment was immaterial as affecting the rights of Emmons under the policy of insurance."

■ Of course Smith and Duty, from the time they drove out of Bailey and Carpenter's place of business were in illegal possession of the automobile, having obtained the possession by fraud. We are not willing to say that the mere demand on the part of Bailey and Carpenter for immediate return of the automobile upon learning of the fraud converted the illegal possession of the fraudulent purchaser into legal possession, which we would be doing if we said that the mere demand for return was tantamount to granting permission to drive the automobile. The *right* to possession is quite different from possession. One may have a right to possession, but without actual possession he may have no control. This is exemplified by the facts in this very case. Bailey and Carpenter, Inc., sent an agent out to the house where Smith and Duty lived to retake possession of the automobile, but the agent was unsuccessful because the automobile was not there and could not be located. The right to retake possession and control existed but not the power, without which the seller was in no position to give or withhold permission.

Smith had the legal and moral duty to return the possession of the automobile from the very time the car was driven out of Bailey and Carpenter's place of business, and that duty continued until possession was surrendered. The relationship of the defrauded party and the fraudulent party as to the automobile did not change upon the mere demand that possession be surrendered.

■ The contention of petitioners that the demand by Bailey and Carpenter, Inc., of Smith to return the automobile immediately constituted a contract of bailment between the parties is so obviously without merit it calls for no discussion.

In view of our holding herein, we do not reach the question of deviation as discussed by the Court of Civil Appeals.

The judgment of the Court of Civil Appeals is affirmed.

SMITH, WALKER and GREENHILL, JJ., dissenting.

GREENHILL, Justice (dissenting).

Third persons who have been absolved of fault were seriously injured in an automobile collision. The car, the driver of which was determined to be at fault, was being returned to the seller of the car by one who had purported to buy it. The route the buyer took is disputed, but the majority opinion assumes that he was returning the car. The only question then is whether the car was covered by the insurance purchased by the seller.

The sale was made on the condition that the buyer's check was good. It was not; so title never passed and the car still be-

longed to the seller. Even if it be assumed that the title did pass, it reverted to the seller because the seller had rescinded the contract of sale. It was the seller's car and unquestionably covered by the seller's insurance if it was being driven by the seller or anyone having the seller's permission or consent to drive it.

The buyer, Smith, had possession of the car. The seller then had to decide how to get the car back. He could have peaceably gotten or sent for it himself; he could have had it repossessed through legal processes; or he could have asked or instructed the buyer to bring (drive) it back. He chose this latter alternative.

When the seller instructed the buyer to bring the car back, certainly the buyer had the seller's permission or consent to drive it back. The car was then being driven by someone with the consent of the owner. The car was therefore covered by the seller's policy: it was being driven by the owner or by someone with the owner's consent.

The only case cited by the majority, Farm Bureau Mutual Ins. Co. v. Emmons, 122 Ind.App. 440, 104 N.E.2d 413 (1952), is completely inapplicable. The seller there had not rescinded the contract of sale. He might never have done so but elected to affirm the contract. So of course the car was not covered by the seller's insurance.

The Court does not reach what I regard as the main point in the case, i. e., the legal test to be applied to determine whether the consent to drive the car had been lost because of the uncertainty of the proof that the buyer had used a direct route in returning the car. He went by a night club to see a girl friend. The insurance company says this was a material deviation. The buyer, on the other hand, said he needed to have her drive him back from seller's place of business upon his return of the car. Since the Court does not reach this question, it is unnecessary to take a position on whether the Court should adopt the "substantial deviation" theory, the

"strict or conversion" theory, or the "hell and high water" theory. These theories are discussed in 7 Appleman, Insurance Law and Practice (1962) §§ 4366–4368, pp. 308–327, and in an annotation in 5 A.L.R.2d 600 at 622 et seq.

SMITH and WALKER, JJ., join in this dissent.